# In the United States Court of Appeals For the Third Circuit

*In re: Merck Mumps Vaccine Antitrust Litigation*

Interlocutory Appeal from the
United States District Court for the
Eastern District of Pennsylvania,
No. 2:12-cv-3555 (Hon. Chad F. Kenney)

## BRIEF FOR AMICUS CURIAE PUBLIC JUSTICE IN SUPPORT OF APPELLEES' PETITION FOR REHEARING

Lucia Goin
Leah M. Nicholls
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600
lgoin@publicjustice.net

*Counsel for Amicus Curiae*

November 26, 2024

# DISCLOSURE STATEMENT

In accordance with Rule 26.1(a) of the Federal Rules of Appellate Procedure and Third Circuit Rule 26.1, the undersigned certifies that there is no publicly traded company or corporation with an interest in the outcome of this case that has not already been disclosed to this Court.

November 26, 2024

/s/ *Lucia Goin*
Lucia Goin

# TABLE OF CONTENTS

Table of Authorities .................................................................. iii

Interest of Amicus Curiae ........................................................ 1

Introduction and Summary of Argument .................................. 2

Argument ................................................................................. 3

    I.    This Court Should Grant Rehearing to Adopt the Fraudulent-Misrepresentation Exception. ........................... 3

        A.    In the Antitrust Context, *Noerr-Pennington* Reflects a Balance Between Core First Amendment Protections and the Integrity of the Competitive Process. .............. 3

        B.    This Case—and Merck's Deception—Subverts that Balance. ......................................................................... 6

    II.    Companies Will Exploit the Lack of a Fraudulent Misrepresentation Exception to the Detriment of Consumers. .............................................................. 9

Conclusion ............................................................................. 14

Combined Certifications

Certificate of Service

# TABLE OF AUTHORITIES

## *Cases*

*A.D. Bedell Wholesale Co. v. Philip Morris Inc.*,
  263 F.3d 239 (3d Cir. 2001) .................................................. 10

*Alemu v. Dep't of For-Hire Vehicles*,
  327 F. Supp. 3d 29 (D.D.C. 2018) ........................................ 5

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
  486 U.S. 492 (1988). ............................................................. 4

*Burke v. St. Jude Med., Inc.*,
  16-CV-3611 (D. Md. July 15, 2021) ..................................... 13

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
  404 U.S. 508 (1972) ............................................................... 6

*Cheminor Drugs, Ltd. v. Ethyl Corp.*,
  168 F.3d 119 (3d Cir.1999) ................................................. 10

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*,
  690 F.2d 1240 (9th Cir. 1982) .............................................. 5

*Coll v. First Am. Title Ins. Co.*,
  642 F.3d 876 (10th Cir. 2011) ............................................ 10

*Counts v. Gen. Motors, LLC*,
  681 F. Supp. 3d 778 (E.D. Mich. 2023) .............................. 13

*Eastern R.R. Presidents Conference v. Noerr Motor Freight*,
  365 U.S. 127 (1961) ............................................................... 4

*Freeman v. Lasky, Haas & Cohler*,
  410 F.3d 1180 (9th Cir. 2005) ............................................ 10

*Friends of Rockland Shelter Animals, Inc. v. Mullen*,
  313 F. Supp. 2d 339 (S.D.N.Y. 2004) ................................... 4

*Geomatrix, LLC v. N.S.F. Int'l.*,
  82 F.4th 466 (6th Cir. 2023) ............................................................. 10

*Hirschfeld v. Spanakos*,
  104 F.3d 16 (2d Cir. 1997) ................................................................ 10

*In re Lipitor Antitrust Litig.*,
  868 F.3d 231 (3d Cir. 2017) .............................................................. 10

*Kottle v. Nw. Kidney Centers*,
  146 F.3d 1056 (9th Cir. 1998) .............................................................. 7

*Mattel, Inc. v. MCA Records, Inc.*,
  296 F.3d 894 (9th Cir. 2002) ................................................................ 7

*Nyberg v. Advanced Bionics Corp.*,
  No. 19-cv-3439 (E.D. Pa. Mar. 14, 2023) ........................................ 13

*Prof'l Real Est. Inv'rs, v. Columbia Pictures Indus.*,
  508 U.S. 49 (1993). ......................................................................... 8, 9

*R.A.V. v. City of St. Paul*,
  505 U.S. 377 (1992) ............................................................................ 4

*Riner v. Recreation Centers of Sun City West, et. al.*,
  No. 22-cv-01421 (D. Ariz. Oct. 31, 2024) ........................................ 13

*Seeks v. Boeing Co.*,
  No. 19-CV-02394, 2024 WL 4367846  (N.D. Ill. Sept. 30, 2024) ......... 13

*Sunwest Assocs. v. Davis*,
  99 F.3d 1147 (9th Cir. 1996) ............................................................ 11

*Tarpley v. Keistler*,
  188 F.3d 788 (7th Cir. 1999) ............................................................ 11

*Town of Concord, Mass. v. Bos. Edison Co.*,
  915 F.2d 17 (1st Cir. 1990) ............................................................. 3, 8

*United Mine Workers of Am. v. Pennington*,
   381 U.S. 657 (1965) ...............................................................4

*United States v. Fulcrum Capital Holdings*,
   No. 18-cv-9160 (S.D.N.Y. Nov. 11, 2023) ...........................13

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
   425 U.S. 748 (1976) ...............................................................6

*Video Int'l Prod., Inc. v. Warner–Amex Cable Commc'ns, Inc.*,
   858 F.2d 1075 (5th Cir. 1988) .............................................10

*Whelan v. Abell*,
   48 F.3d 1247 (D.C. Cir. 1995) ...............................................9

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) .............................................10

## Other Authorities

Aaron R. Gary, *First Amendment Petition Clause Immunity from Tort Suits: In Search of a Consistent Doctrinal Framework*, 33 Idaho L. Rev. 67 (1996) ....................................................................11

Press Release, U.S. Attorney's Office, District of Colorado (Jan. 15, 2021), https://www.justice.gov/usao-co/pr/colorado-springs-company-and-its-owners-agree-pay-over-400000-resolve-allegations-it; or.......13

## Constitutional Provision

U.S. Const. amend I, cl. 6...........................................................2

## INTEREST OF AMICUS CURIAE[1]

Public Justice is a nonprofit legal advocacy organization that specializes in socially significant civil litigation and focuses on fighting corporate and governmental misconduct. The organization maintains an Access to Justice Project that litigates and advocates to remove procedural obstacles that unduly restrict the ability of workers, consumers, and people whose civil rights have been violated to seek redress for their injuries in the civil court system.

---

[1] Neither party's counsel authored this brief in whole or in part and no party contributed money intended to fund preparing or submitting this brief.

## INTRODUCTION AND SUMMARY OF ARGUMENT

In the antitrust context, *Noerr-Pennington* immunity can be understood as a compromise between the protections guaranteed by the Petition Clause of the First Amendment, *see* U.S. Const. amend I, cl. 6, and the threat posed by anticompetitive conduct. Anticompetitive behavior that falls near the core of the First Amendment—i.e., speech in the political sphere—is immunized, but anticompetitive behavior typically unprotected by the First Amendment—i.e., speech that is false or fraudulent—is not. This Circuit's failure to adopt a fraudulent-misrepresentation exception to *Noerr-Pennington* immunity subverts this compromise: it protects behavior far from the core of the First Amendment, and it does not safeguard the competitive process.

As Merck did here, companies will exploit this Court's rule to the detriment of consumers. *Noerr-Pennington* is a First Amendment immunity, and it applies outside of the antitrust context. Under this Circuit's precedent, companies are free to misrepresent to regulators information concerning the safety of their household products, the environmental impact of their vehicles, or the efficacy of their pharmaceuticals, and may do so knowing—so long as their

misrepresentations are filtered through a regulator—that they are immune from liability. This result cannot hold. The Court should grant rehearing en banc to join other Circuits that have considered the issue, and adopt the fraudulent-misrepresentation exception to *Noerr-Pennington*.

## ARGUMENT

### I. This Court Should Grant Rehearing to Adopt the Fraudulent-Misrepresentation Exception.

#### A. In the Antitrust Context, *Noerr-Pennington* Reflects a Balance Between Core First Amendment Protections and the Integrity of the Competitive Process.

The Supreme Court's *Noerr-Pennington* jurisprudence can be understood as striking a balance between the threat to fair market competition caused by the alleged unlawful behavior, on the one hand, and how closely the behavior comes to the core of the First Amendment's protections, on the other. The Sherman Act restrains behavior when "it harms the competitive process," by "obstruct[ing] the achievement of competition's basic goals—lower prices, better products, and more efficient production methods." *Town of Concord, Mass. v. Bos. Edison Co.*, 915 F.2d 17, 21–22 (1st Cir. 1990). Harms to the competitive process are

balanced against how closely the speech falls to the "[c]ore" of the First Amendment, which protects primarily "political speech." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 422 (1992) (Stevens, J., concurring in the judgment).

Behavior that harms the competitive process but bears close proximity to the core of the First Amendment—i.e., political speech—receives constitutional immunity from liability. *Eastern R.R. Presidents Conference v. Noerr Motor Freight*, 365 U.S. 127, 141 (1961) ("The proscriptions of the Act, tailored as they are for the business world, are not at all appropriate for application in the political arena."); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 660 (1965); *Friends of Rockland Shelter Animals, Inc. v. Mullen*, 313 F. Supp. 2d 339, 343–44 (S.D.N.Y. 2004) (holding that misrepresenting facts to a legislature is not a sham because "[e]ven lobbying activities that are unethical or result in deception are not actionable under the *Noerr-Pennington* doctrine").

A publicity campaign "directed at the general public, seeking legislative or executive action, enjoys antitrust immunity even when the campaign employs unethical and deceptive methods." *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499–500 (1988).

Publicity campaigns are core First-Amendment activity, and even a deceitful legislative campaign does not obviously disrupt the competitive process. This type of conduct—"reprehensible as it is," *Noerr*, 365 U.S., at 145—when present in the "political sphere," is subject to "debate," and can be "accommodate[d]" and "reveal[ed]," *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1261 (9th Cir. 1982). Misrepresentations in the public sphere can be countered with other speech demonstrating their falsity: the marketplace of ideas that is at the core of First Amendment protections. By contrast, conduct that "subvert[s] the integrity of the governmental process," such that the "nature of those processes caus[e] the private party's alleged persuasive efforts to fall outside of the scope of 'political activity'"—i.e., outside of the core of the First Amendment—is not entitled to immunity. *Alemu v. Dep't of For-Hire Vehicles*, 327 F. Supp. 3d 29, 51 (D.D.C. 2018) (quotation marks omitted); *see also Clipper Exxpress*, 690 F.2d at 1261 ("In the adjudicatory sphere . . . information supplied by the parties is relied on as accurate for decision making and dispute resolving.").

Outside of the political arena, and outside the core of the First Amendment, the Supreme Court is more likely to craft exceptions to

*Noerr-Pennington* immunity. Anticompetitive activity in nonpolitical, judicial, or "adjudicatory process[es]"—like the one implicated in this case—is more likely to receive antitrust scrutiny. *See, e.g.*, *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 512 (1972) (filing frivolous objections to a license application of a competitor—with no expectation of achieving denial of the license, but simply in order to impose expense and delay—is not immunized). And in general, deception, manipulation, and false speech—outside of the context of the iterative, public political process—fall outside of the core of the First Amendment. *See, e.g., Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976) ("Untruthful speech, commercial or otherwise, has never been protected for its own sake.").

### B. This Case—and Merck's Deception—Subverts that Balance.

Guided by the anticompetitive-free speech balance designed by the Supreme Court, this Circuit should grant rehearing and conclude that Merck's conduct in this case does not constitute protected First Amendment petitioning activity, runs counter to the protections of the Sherman Act, and is not immunized by *Noerr-Pennington*. Merck's behavior—"misrepresenting or concealing information" regarding the

end-of-shelf-life potency issues with its vaccine in order to achieve a renewed license application from the FDA, *see* Op. *6—is unvaluable, anticompetitive speech. The First Amendment "does not protect commercial fraud," *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 905 (9th Cir. 2002), and—because *Noerr-Pennington* is "a direct application of the [First Amendment's] Petition Clause," *Kottle v. Nw. Kidney Centers*, 146 F.3d 1056, 1059 (9th Cir. 1998)—this Court should decline to enlarge the textual immunity granted by the Constitution, and conclude that fraudulent misrepresentations made in a nonpolitical sphere are not immunized, just as they are not protected by the First Amendment.

Not only does the panel's conclusion in this case run counter to the First Amendment, it also sanctions anticompetitive conduct. Merck succeeded in preventing a competitor from entering the United States market with a vaccine that potentially threatened its own vaccine by having greater efficacy and a longer shelf life. *See* Dissent *7 & n.13. Merck's scheme awarded it an "additional $10 million in revenue," for each month, for each of the ten years that its misrepresentations to the FDA successfully delayed entry of a competitor to the market. *See id.* *9

n.13; Op. *20. Consumers bore the brunt of this deception: without an alternative, they were left purchasing a possibly inferior product, for an inflated price, for a decade. *See Town of Concord*, 915 F.2d at 21–22 (describing the goal of a competitive marketplace as "lower prices" and "better products").

That Merck succeeded in achieving the goal of its misrepresentations should not change this result. *See* Op. *4. The majority views Merck's behavior as immunized because Merck genuinely sought and received a favorable result from petitioning the FDA (i.e., approval of its drug-label claims), and "a plaintiff must show that the petitioner sought to use government process itself—as opposed to the result of that process—as an anticompetitive weapon to invoke the sham exception to *Noerr-Pennington* immunity." Op. 18 n.12. Distinguishing between process and outcome can aid in determining whether petitioning activity is objectively aimed at procuring favorable government outcomes, *see Prof'l Real Est. Inv'rs, v. Columbia Pictures Indus.*, 508 U.S. 49, 58 (1993), and here, there is no dispute that Merck sought to obtain a favorable outcome, *see* Op. *3–4. But misrepresentations in the course of obtaining that outcome are, in essence, a deceptive

weaponization of the petitioning process. *See, e.g., Whelan v. Abell*, 48 F.3d 1247, 1254 (D.C. Cir. 1995) (declining to immunize defendants from tortious interference claims where "plaintiffs . . . have shouldered the burden of showing that the defendants' petitions were deliberately false"). The core of the *Noerr-Pennington* doctrine is the preservation of genuine petitioning activity, and nothing in the Supreme Court's *Noerr-Pennington* jurisprudence suggests that the fact that FDA approved Merck's re-labeling in reliance on misrepresentations transforms Merck's fraudulent representations into genuine petitioning.

## II. Companies Will Exploit the Lack of a Fraudulent Misrepresentation Exception to the Detriment of Consumers.

Without the fraudulent-misrepresentation exception to the *Noerr-Pennington* doctrine, private parties are free to willingly and knowingly lie to government actors, so long as the government ultimately acts in their favor. That result cannot hold.

To start, *Noerr-Pennington* immunity is not limited to the antitrust context.[2] *See Prof'l Real Est. Invs., Inc.*, 508 U.S. at 59; *Hirschfeld v.*

---

[2] The panel's mistaken belief that "*Noerr-Pennington* immunity is a substantive principle of antitrust law," Op. *19—rather than a First

*Spanakos*, 104 F.3d 16, 19 (2d Cir. 1997) (stating *Noerr* "has been extended to provide immunity from liability for bringing other suits"); *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000) ("While the Noerr-Pennington doctrine originally arose in the antitrust context, it is based on and implements the First Amendment right to petition and therefore, with one exception . . . applies equally in all contexts."); *see also, e.g., Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1084 (5th Cir. 1988) (applying *Noerr-Pennington* to tortious interference claim). And the doctrine protects an increasingly wide range of behavior. First Amendment "petitioning" includes "filing complaints, reporting violations, testifying, letter-writing, lobbying, . . . and filing law-suits." Aaron R. Gary, *First Amendment Petition Clause Immunity*

Amendment immunity—conflicts with analysis by this Court and other circuits that have opined on the foundations of the doctrine. *See, e.g., In re Lipitor Antitrust Litig.*, 868 F.3d 231, 264 (3d Cir. 2017) (stating that *Noerr-Pennington* is "'[r]ooted in the First Amendment and fears about the threat of chilling political speech.'" (quoting *A.D. Bedell Wholesale Co. v. Philip Morris Inc.*, 263 F.3d 239, 250 (3d Cir. 2001)); *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 122–23, 128 (3d Cir.1999) (establishing *Noerr-Pennington* as an outgrowth of the First Amendment); *see also, e.g., Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005) ("[T]he *Noerr-Pennington* doctrine grows out of the Petition Clause[.]"); *Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 895 (10th Cir. 2011) (same); *Geomatrix, LLC v. N.S.F. Int'l.*, 82 F.4th 466, 487 (6th Cir. 2023) (same).

*from Tort Suits: In Search of a Consistent Doctrinal Framework*, 33 Idaho L. Rev. 67, 71 (1996) (quotation marks omitted). It includes "complaining to appropriate county officials about unfit teachers or about police misconduct," "completing a questionnaire promulgated by a judicial commission rating candidates' fitness for judicial office," or "reporting violations of environmental laws . . . to federal agencies." *Id.*; *see also, e.g., Tarpley v. Keistler*, 188 F.3d 788, 795 (7th Cir. 1999) ("[m]aking suggestions about whom to hire" at a state hospital is First Amendment petitioning activity); *Sunwest Assocs. v. Davis*, 99 F.3d 1147 (9th Cir. 1996) (unpublished table decision) ("[p]reparing reports" or "hiring experts" to provide opinions to a local government body is petitioning). And—as the majority held—it includes "communications" with a government agency that "sought to persuade" that agency "to approve or refrain from changing" pharmaceutical claims. Op. *14.

This broad view of petitioning activity—taken in conjunction with the failure to recognize the fraudulent-misrepresentation exception—leads to untenable results. Private companies in the Third Circuit can freely misrepresent information to regulators regarding the emissions of their factories, the safety of their vehicles, the health benefits of their

products, or the efficacy of their pharmaceutical drugs; so long as the regulator concludes, as here, that the misrepresented information achieves a favorable outcome for the petitioner, the company is immunized from suit. Not only are there public health and safety implications of products being approved for consumer use based on false information, but consumers are often poorly situated to independently evaluate the veracity of claims made to regulators, because they cannot independently test vehicle emissions or evaluate technical specifications. As a result, consumers will continue to rely on regulators' approval of these claims for their own marketplace choices. If manufacturers do not separately misrepresent key information directly to private parties—which would allow consumers to seek an alternative remedy and file their own fraud claims—then there will be zero remedy for the negative consequences of these misrepresentations.

Any government action or even criminal investigation that could be instigated in response to misleading statements made to regulators will be precluded, too, because nothing in the majority's opinion limits *Noerr-Pennington* to avoid these applications. Consider the following cases concerning misrepresentations that, under the majority's decision, could

amount to petitioning activity and be immunized by *Noerr-Pennington*:

- Misrepresenting monetary claims to a court-appointed special master overseeing a victims' recovery fund, *see United States v. Fulcrum Capital Holdings*, No. 18-cv-9160 (S.D.N.Y. Nov. 11, 2023), ECF No. 23;

- Lying to regulators regarding emissions produced by vehicles, *see Counts v. Gen. Motors, LLC,* 681 F. Supp. 3d 778, 785 (E.D. Mich. 2023);

- Failing to provide FAA with all necessary information concerning faulty system installed in airplane in certification process, *see Seeks v. Boeing Co.*, No. 19-CV-02394, 2024 WL 4367846, at *5 (N.D. Ill. Sept. 30, 2024);

- Providing false statements in applications for Paycheck Protection Program ("PPP") loans in order to induce government grant of funds, *see, e.g., Riner v. Recreation Centers of Sun City West, et. al.*, No. 22-cv-01421 (D. Ariz. Oct. 31, 2024), ECF No. 15;

- Misleading federal healthcare programs regarding radio frequencies generated by cochlear implant processors, *see Nyberg v. Advanced Bionics Corp.*, No. 19-cv-3439 (E.D. Pa. Mar. 14, 2023), ECF No. 27;

- Misrepresenting eligibility for a federal program providing funding to small businesses in order to receive funding, *see* Press Release, U.S. Attorney's Office, District of Colorado (Jan. 15, 2021), https://www.justice.gov/usao-co/pr/colorado-springs-company-and-its-owners-agree-pay-over-400000-resolve-allegations-it; or

- Failing to report serious injuries caused by defective heart devices to the FDA in application to approve a change in battery used by the devices, *see Burke v. St. Jude Med., Inc.,* 16-CV-3611 (D. Md. July 15, 2021), ECF No. 30.

In short: the incentive that flows from this framework is to lie. The choice created for private companies by this Court's broad view of *Noerr-Pennington* is to either expend resources procuring reliable information to assess whether their products meet legal requirements, or save the funds, misrepresent the products, and profit from regulators' and consumers' reliance. This Court should take this case as a vehicle to reconsider its prior binding decisions rejecting the fraudulent-misrepresentation exemption to *Noerr-Pennington* immunity.

## CONCLUSION

For these reasons and those stated in Appellees' Petition for Rehearing, the Court should grant rehearing.

November 26, 2024

Respectfully Submitted,

*/s/ Lucia Goin*
Lucia Goin
Leah M. Nicholls
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600
lgoin@publicjustice.net

*Counsel for Amicus Curiae*

# COMBINED CERTIFICATIONS

*Bar membership.* I am a member of the bar of the United States Court of Appeals for the Third Circuit.

*Word limit.* This document complies with the type volume requirements of Fed. R. App. P. 29(b)(4) because it contains 2,593 words as calculated with the word-counting feature of Microsoft Office and excluding the portions of the document exempted by Fed. R. App. P. 32(f).

*Typeface and typestyle.* This document complies with the typeface and typestyle requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because it has been prepared in 14-point Century Schoolbook font, which is a proportionally spaced typeface.

*Identical copies.* The text of the electronic brief is identical to the text in the paper copies.

*Virus check.* The electronic brief has been scanned for viruses with Bitdefender Endpoint Security software. No virus was detected by the software.

November 26, 2024

*/s/ Lucia Goin*
Lucia Goin

*Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

I certify that the foregoing was served via the Court's electronic case management system upon all counsel of record.

November 26, 2024

*/s/ Lucia Goin*
Lucia Goin

*Counsel for Amicus Curiae*