No. 23-3089

# United States Court of Appeals for the Third Circuit

_____

In re: Merck Mumps Vaccine Antitrust Litigation

Chatom Primary Care, P.C., individually and on behalf of all others similarly situated, et al., *Plaintiffs-Appellees,*

v.

Merck & Co., Inc., *Defendant-Appellant.*

_____

Interlocutory Appeal from the United States District Court for the Eastern District of Pennsylvania

(No. 2:12-cv-3555-CFK, Judge Chad F. Kenney)

**Plaintiffs-Appellees' Petition for En Banc Rehearing**

**BRIEF OF OPEN MARKETS INSTITUTE AS *AMICUS CURIAE* IN SUPPORT OF THE PLAINTIFFS-APPELLEES' PETITION FOR EN BANC REHEARING**

_____

| | |
|---|---|
| Sandeep Vaheesan | Jason S. Rathod |
| Tara Pincock | Migliaccio & Rathod LLP |
| Open Markets Institute | 412 H Street NE Suite 302 |
| 655 15th Street NW Suite 310 | Washington, D.C. 20002 |
| Washington, D.C. 20005 | jrathod@classlawdc.com |

November 26, 2024          *Counsel for Amicus Curiae*

# CORPORATE DISCLOSURE STATEMENT

As required by Federal Rule of Appellate Procedure 26.1, I certify that *amicus curiae* Open Markets Institute is a nonprofit, non-stock corporation. It has no parent corporations, and no publicly traded corporations have an ownership interest in it.

# TABLE OF CONTENTS

**CORPORATE DISCLOSURE STATEMENT** ....................................................... i
**TABLE OF AUTHORITIES** ................................................................................ iii
**INTEREST OF THE *AMICUS CURIAE*** ............................................................. 1
**SUMMARY OF ARGUMENT** ............................................................................. 1
**ARGUMENT** ......................................................................................................... 4
   **I. By Granting Absolute *Noerr-Pennington* Protection for Misrepresentations in Adjudicative Proceedings, this Court Is Out of Step with the Decisions of the Supreme Court and Sister Circuits** ........................... 4
   **II. Denying *Noerr-Pennington* Immunity for Misrepresentations Is Essential for Protecting the Public Against Monopolization by Deception** .................... 9
**CONCLUSION** ................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492 (1988)..............6, 7

*Amphastar Pharms. Inc. v. Momenta Pharms. Inc.*, 850 F.3d 52 (1st Cir. 2017).....7

*Beckman Instruments, Inc. v. Chemtronics, Inc.*, 439 F.2d 1369 (5th Cir. 1970)...10

*Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972) ......................6

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240 (9th Cir. 1982) ........................................................................................................7

*Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961).2, 4

*In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677 (2d Cir. 2009).........9

*In re Lipitor Antitrust Litig.*, 855 F.3d 126 (3d Cir. 2017)....................................2, 8

*Kearney v. Foley & Lardner, LLP*, 590 F.3d 638 (9th Cir. 2017)............................8

*Litton Sys., Inc. v. Am. Tel. & Tel. Co.*, 700 F.2d 785 (2d Cir. 1983) ......................7

*McDonald v. Smith*, 472 U.S. 479 (1985)................................................................6

*Mercatus Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834 (7th Cir. 2011) ...............7

*Potters Med. Ctr. v. City Hosp. Ass'n.*, 800 F.2d 568 (6th Cir. 1986) .....................7

*Prof'l Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993)...5

*Razorback Ready Mix Concrete Co. v. Weaver*, 761 F.2d 484 (8th Cir. 1985) ........8

*Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294 (Fed. Cir. 1999) ......................7

*St. Joseph's Hosp. v. Hosp. Corp. of Am.*, 795 F.2d 948 (11th Cir. 1986); *Whelan v. Abell*, 48 F.3d 1247 (D.C. Cir. 1995) ................................................................7

*Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006) ........................................................7

*United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Novartis Pharms. Corp.*, 902 F.3d 1 (1st Cir. 2018) .............................................. 9

*United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965) ....................... 2, 4

*Walker Process Equip., Inc. v. Food Machinery & Chem. Corp.*, 382 U.S. 172 (1965) ............................................................................................................. 2, 6

*Woods Expl. & Producing Co. v. Aluminum Co. of Am.*, 438 F.2d 1286 (5th Cir. 1971) ................................................................................................................. 7

**Administrative Materials**

Fed. Trade Comm'n, *Enforcement Perspectives on the* Noerr-Pennington *Doctrine* (2006) ............................................................................................... 3, 4, 9, 10

*In re Union Oil Co. of Cal.*, 138 F.T.C. 1 (2004) ............................................. passim

U.S. Food & Drug Admin., *Generic Competition and Drug Prices* ................... 4, 11

**Other Authorities**

Marina Lao, *Reforming the* Noerr-Pennington *Antitrust Immunity Doctrine*, 55 Rutgers L. Rev. 965 (2003) ................................................................................ 6

Mustaqeem Siddiqui & S. Vincent Rajkumar, *The High Cost of Cancer Drugs and What We Can Do About It*, 87 Mayo Clinic Proc. 935 (2012) ............................. 11

# INTEREST OF THE *AMICUS CURIAE*[1]

The Open Markets Institute is a non-profit organization dedicated to protecting democracy and individual liberties from concentrated economic power and control. Open Markets does so by promoting fair competition throughout our political economy, a broadly shared prosperity, and innovation that serves the public interest. Open Markets regularly provides expertise on antitrust law and competition policy to Congress, federal agencies, courts, journalists, and members of the public. It does not accept any funding or donations from for-profit corporations.

# SUMMARY OF ARGUMENT

Corporations should not be free to abuse administrative and judicial proceedings as a competitive weapon. While members of the public have the right to petition the government, that right is not absolute and does not—and should not—cover deceiving regulators and judges. In general, the *Noerr-Pennington* doctrine protects from antitrust liability petitioning that promotes legislation, regulation, or other governmental action that may adversely affect consumers,

---

[1] All parties consent to the filing of this *amicus* brief. No counsel for a party has authorized this brief in whole or in part, and no party, party's counsel, or any other person, other than *amicus curiae* or its counsel, has contributed money that was intended to fund preparing or filing this brief. Counsel for the plaintiffs-appellees, Deepak Gupta, is on the Open Markets Institute's board of directors. He played no role in writing, funding, or authorizing the filing of this brief.

1

suppliers, workers, or rivals. *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135-36 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 669-72 (1965). The courts, however, have established important limitations on this doctrine. The Supreme Court and most federal courts of appeals have held that material misrepresentations in adjudicative proceedings are not protected. For example, a firm that obtains or maintains a monopoly through the fraudulent procurement of a patent can be liable under the antitrust laws. *Walker Process Equip., Inc. v. Food Machinery & Chem. Corp.*, 382 U.S. 172, 174 (1965). This Court's protection of material misrepresentations in adjudicatory proceedings runs counter to a long line of precedents and empowers corporations to abuse governmental processes to monopolize and dominate markets.

This Court's refusal to recognize a general exception for misrepresentations has created a peculiar dichotomy in the Third Circuit. A pharmaceutical company that obtains a patent through fraud on the U.S. Patent and Trademark Office and thereby acquires or extends a monopoly could face legal liability for monopolization. *In re Lipitor Antitrust Litig.*, 855 F.3d 126, 145-46 (3d Cir. 2017). But the same company engaging in fraud on the U.S. Food and Drug Administration (FDA), however, can insulate itself through the *Noerr-Pennington* doctrine. In other words, if the Court's current approach to *Noerr-Pennington*

2

continues, material misrepresentations to one federal agency in an adjudicative proceeding could trigger antitrust liability while misrepresentations to another would be entitled to absolute protection from the antitrust laws.

Excluding misrepresentations from *Noerr-Pennington* protection helps prevent administrative and judicial proceedings from being abused as a competitive weapon. In adjudicatory matters, agencies and courts are dependent on the parties for factual information and ordinarily cannot undertake their own investigations. Fed. Trade Comm'n, *Enforcement Perspectives on the* Noerr-Pennington *Doctrine* 27 (2006). The exclusion of misrepresentations and omissions from *Noerr-Pennington* protection deters firms from abusing administrative and judicial processes, such as by improperly obtaining court orders or regulatory privileges to acquire or protect a monopoly. If *Noerr-Pennington* covered misrepresentations to adjudicatory bodies, "building a monopoly through blatant lying would be protected." *In re Union Oil Co. of Cal.*, 138 F.T.C. 1, 45-46 (2004).

By granting absolute protection to misrepresentations made to the FDA, this Court authorizes and even encourages the abuse of the agency's proceedings as a competitive weapon across sectors. Through these unscrupulous methods, branded drug manufacturers, for example, can block generic drug entry and deprive the public of valuable price competition. At present, generic drug competition saves

3

the public tens of billions of dollars annually. *See* U.S. Food & Drug Admin.,

*Generic Competition and Drug Prices*.[2] By thwarting generic competition through

abuses of administrative and judicial processes and thereby preserving

monopolistic pricing, branded drug companies can inflict substantial harm on

patients' economic and physical well-being. This Court, in interpreting the *Noerr-*

*Pennington* doctrine, should not permit such misconduct.

## ARGUMENT

**I. By Granting Absolute *Noerr-Pennington* Protection for Misrepresentations in Adjudicative Proceedings, this Court Is Out of Step with the Decisions of the Supreme Court and Sister Circuits**

The right to petition the government is broad but not absolute. While the

*Noerr-Pennington* doctrine generally confers insulation against antitrust liability

for petitioning of government that promotes legislation, regulation, or other state

action that may adversely affect consumers, suppliers, workers, or rivals, *Eastern*

*R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135-36 (1961);

*United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 669-72 (1965), this

protection has important limitations. *See generally* Fed. Trade Comm'n,

*Enforcement Perspectives on the* Noerr-Pennington *Doctrine* (2006). In addition to

---

[2]https://www.fda.gov/AboutFDA/CentersOffices/OfficeofMedicalProductsandTobacco/CDER/ucm129385.htm.

4

the sham exception,[3] a significant body of case law has recognized that material misrepresentations and omissions (hereafter collectively "misrepresentations") to administrative agencies and courts in adjudicative proceedings are not entitled to *Noerr-Pennington* protection. Whereas sham petitioning seeks to abuse governmental process to tie up rivals in administrative or judicial red tape and is indifferent to the *outcome* of the process, "the purpose of misrepresentations is to obtain government action." *In re Union Oil Co. of Cal.*, 138 F.T.C. 1, 43 (2004).

Although the Supreme Court has not formally decided whether misrepresentations fall outside the scope of *Noerr-Pennington*,[4] the Court indicated, in a series of decisions, that they may *not* be protected. Most notably, the Court held that the procurement of a patent through the intentional submission of false information and omission of material information to the U.S. Patent and

---

[3] For purposes of the *Noerr-Pennington* doctrine, the Supreme Court has defined unprotected sham petitioning as both "objectively baseless in that no reasonable litigant could realistically expect success on the merits" and "conceal[ing] an attempt to interfere directly with the business relationships of a competitor, through the use of the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon." *Prof'l Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993).

[4] *See Prof'l Real Est. Invs* , 508 U.S. at 61 n.6 (citation omitted) ("In surveying the forms of illegal and reprehensible practice which may corrupt the administrative or judicial processes and which may result in antitrust violations, we have noted that unethical conduct in the setting of the adjudicatory process often results in sanctions and that misrepresentations, condoned in the political arena, are not immunized when used in the adjudicatory process. We need not decide here whether and, if so, to what extent *Noerr* permits the imposition of antitrust liability for a litigant's fraud or other misrepresentations.").

Trademark Office (PTO) can be actionable under the antitrust laws. *Walker Process Equip., Inc. v. Food Machinery & Chem. Corp.*, 382 U.S. 172, 174 (1965). While not examining the relevance of *Noerr-Pennington* in the *Walker Process* decision, the Court announced that material misrepresentations to one administrative agency can give rise to antitrust liability, implicitly limiting the breadth of *Noerr-Pennington* protection.[5] Marina Lao, *Reforming the* Noerr-Pennington *Antitrust Immunity Doctrine*, 55 Rutgers L. Rev. 965, 1021 (2003).

The Supreme Court subsequently stated that misrepresentations may bar application of the *Noerr-Pennington* doctrine. When setting the boundaries of the immunity, the Court wrote that "[m]isrepresentations, condoned in the political arena, are not immunized when used in the adjudicatory process." *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972). Firms are not free to abuse government processes to "build[] up one empire and destroy[] another." *Id.* at 515. Observing that "[t]he scope of [*Noerr-Pennington*] protection depends . . . on the source, context, and nature of the anticompetitive restraint at issue," *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499 (1988), the Court stated that "unethical and deceptive practices can constitute abuses of

---

[5] In a similar spirit, the Supreme Court held that "petitions to the President that contain intentional and reckless falsehoods do not enjoy constitutional protection[.]" *McDonald v. Smith*, 472 U.S. 479, 484 (1985) (internal citations omitted).

administrative or judicial processes that may result in antitrust violations." *Id.* at 500.

Guided by the Supreme Court's decisions and statements, most courts of appeals have ruled that misrepresentations to administrative agencies and courts are not entitled to *Noerr-Pennington* immunity. Some courts have held or implied that misrepresentations fall outside the scope of petitioning under *Noerr-Pennington* or trigger an independent exception to *Noerr-Pennington*. *See Amphastar Pharms. Inc. v. Momenta Pharms. Inc.*, 850 F.3d 52, 56 (1st Cir. 2017); *Woods Expl. & Producing Co. v. Aluminum Co. of Am.*, 438 F.2d 1286, 1298 (5th Cir. 1971); *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1259-63 (9th Cir. 1982); *St. Joseph's Hosp. v. Hosp. Corp. of Am.*, 795 F.2d 948, 955 (11th Cir. 1986); *Whelan v. Abell*, 48 F.3d 1247, 1255 (D.C. Cir. 1995); *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1307 (Fed. Cir. 1999). *See also Tal v. Hogan*, 453 F.3d 1244, 1260 (10th Cir. 2006) ("[The *Noerr-Pennington*] immunity does not encompass fraudulent or illegal actions.").

Other courts have characterized misrepresentations as one species of unprotected sham petitioning. *Litton Sys., Inc. v. Am. Tel. & Tel. Co.*, 700 F.2d 785, 810-11 (2d Cir. 1983); *Potters Med. Ctr. v. City Hosp. Ass'n.*, 800 F.2d 568, 578 (6th Cir. 1986); *Mercatus Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834, 843 (7th Cir. 2011); *Razorback Ready Mix Concrete Co. v. Weaver*, 761 F.2d 484, 487

7

(8th Cir. 1985); *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 646-47 (9th Cir. 2017). Whatever the formal label, the effect of these decisions is the same: material misrepresentations to adjudicatory bodies are not immunized from antitrust liability.

This Court's absolute immunity for misrepresentations is inconsistent with the substantial weight of legal precedent. The Supreme Court and sister circuits have expressly or implicitly recognized a misrepresentation exception to the *Noerr-Pennington* doctrine. While creating ample space for the public to petition the government, they have rejected immunity for material falsehoods in adjudicatory proceedings. Synthesizing the case law, the Federal Trade Commission concluded that "a misrepresentation or omission" that is "deliberate, subject to factual verification, and central to the legitimacy of the affected governmental proceeding" is not entitled to *Noerr-Pennington* protection. *Union Oil*, 138 F.T.C. at 57.

The Court's immunization of misrepresentations under *Noerr-Pennington* further sets up a peculiar and unprincipled legal dichotomy. A pharmaceutical company obtaining a patent through fraud on the PTO and thereby acquiring or extending a monopoly could face *Walker Process* claims under Section 2 of the Sherman Act in this Court, as well as sister circuits. *In re Lipitor Antitrust Litig.*, 855 F.3d 126, 145-46 (3d Cir. 2017); *United Food & Com. Workers Unions &*

*Emps. Midwest Health Benefits Fund v. Novartis Pharms. Corp.*, 902 F.3d 1, 8-9 (1st Cir. 2018); *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 685 (2d Cir. 2009). In this Court, however, a different legal standard applies to the U.S. Food and Drug Administration (FDA). The same company engaging in fraud on the FDA could do so confident it was insulated from antitrust liability if sued in federal district court in Delaware, New Jersey, Pennsylvania, or the U.S. Virgin Islands. In other words, material misrepresentations to one federal agency in an adjudicative proceeding could trigger antitrust liability while misrepresentations to another agency would be entitled to absolute protection from the antitrust laws. No reason exists for this Court to treat material misrepresentations to the PTO differently than material misrepresentations to the FDA.

**II. Denying *Noerr-Pennington* Immunity for Misrepresentations Is Essential for Protecting the Public Against Monopolization by Deception**

Excluding misrepresentations from *Noerr-Pennington* protection prevents the misuse of administrative and judicial proceedings as a competitive weapon. Decision-making by administrative agencies and courts is typically premised on truthful submissions from participants. *Union Oil*, 138 F.T.C. at 51-55. In adjudicatory matters, agencies and courts are especially dependent on the parties for factual information and generally cannot undertake their own investigations. *Enforcement Perspectives on the* Noerr-Pennington *Doctrine*, *supra*, at 27. Thus,

permitting parties to submit falsehoods and claim *Noerr-Pennington* immunity subverts administrative and judicial decision-making.

This limitation on *Noerr-Pennington* protection deters firms from abusing adjudicatory processes to acquire or maintain a monopoly. In the absence of this exclusion, firms seeking to monopolize markets would have a *legal* path for doing so. If misrepresentations were entitled to *Noerr-Pennington* protection, "building a monopoly through blatant lying would be protected." *Union Oil*, 138 F.T.C. at 45-46. Denying *Noerr-Pennington* immunity for misrepresentations allows antitrust enforcers, public and private, to police this type of monopolization strategy. By contrast, this Court's protection of misrepresentations "create[s] perverse incentives to lie, in abuse of judicial and administrative processes." *Id.* at 47. It allows deception to be used as a legally protected competitive weapon.

Ensuring that antitrust law can protect the public against firms "building a monopoly through blatant lying" is especially imperative in pharmaceutical markets. *Id.* at 45. Markets for medicines are structured by, in addition to common law rules, extensive federal regulation, including by FDA and the PTO. In carrying out their missions relevant to the pharmaceutical sector, these agencies are dependent on the parties submitting truthful information. *Enforcement Perspectives on the* Noerr-Pennington *Doctrine*, *supra*, at 4; *Beckman Instruments, Inc. v. Chemtronics, Inc.*, 439 F.2d 1369, 1379 (5th Cir. 1970).

By granting absolute immunity to those who submit material misrepresentations to the FDA, this Court authorizes and even encourages the abuse of the agency's proceedings as a competitive weapon. For instance, through the submission of false information to the FDA, branded drug manufacturers can block generic entry and deprive the public of valuable price competition. Without vigorous generic competition, patients and payors would dole out tens of billions of dollars more each year for medications *See* U.S. Food & Drug Admin., *Generic Competition and Drug Prices*.[6]. By abusing the FDA regulatory system and preserving their monopolistic pricing, branded drug companies can extract unjustified private taxes from patients and payors and impair drug access and thereby imperil patients' health. Mustaqeem Siddiqui & S. Vincent Rajkumar, *The High Cost of Cancer Drugs and What We Can Do About It*, 87 Mayo Clinic Proc. 935 (2012). This Court should not give legal blessing to such blatant misconduct.

## CONCLUSION

For the reasons given above, the Court should grant the plaintiffs-appellees' petition for en banc rehearing.

---

[6] https://www.fda.gov/AboutFDA/CentersOffices/OfficeofMedicalProductsandTobacco/CDER/ucm129385.htm.

Respectfully submitted,

*/s/* Jason S. Rathod
JASON S. RATHOD
MIGLIACCIO & RATHOD LLP
412 H Street NE Suite 302
Washington, D.C. 20002
jrathod@classlawdc.com

## COMBINED CERTIFICATIONS

I, Jason S. Rathod, am duly admitted to practice law before the United States Court of Appeals for the Third Circuit.

This brief was prepared on a computer using Microsoft Word 365. The font is Times New Roman, 14-point, double spaced. The word count of the body of the brief, including footnotes and point headings, as calculated by Microsoft Word 365, is 2,422 words.

I, Jason S. Rathod, hereby certify that the brief is served in compliance with the Court's rules and the electronic PDF version has been properly served on the Court on the date of the ECF filing of this brief.

I, Jason S. Rathod, hereby certify that a virus check was performed on this brief and that it is free from viruses. The check was performed with VirusTotal, version 3.

November 26, 2024  */s/ Jason S. Rathod*
Jason S. Rathod